**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA

v.                                                                                    CASE NO.  3:05-cr-9-J-25MMH

PATRICK M. SINGLETARY
ROBERT D. SINGLETARY
PETER J. RUSSO
CLIFFORD R. SHAW
_____/

## O R D E R

This cause is before the Court sua sponte.  The undersigned disclosed at a hearing held on April 5, 2005, that the undersigned's family owns stock in Wachovia Corporation, formerly known as First Union Corporation (First Union).  First Union has been identified as an alleged victim in the Indictment (Dkt. No. 1).  See Indictment at 34, 36.  However, at the time of the hearing, the government was unable to state whether Wachovia could be entitled to restitution in the event of a successful prosecution.  Thus, the Court asked the parties to submit memoranda of law addressing their positions on whether recusal is warranted based on the undersigned's stock ownership.  See Order (Dkt. No. 150) at 2.

The government and Defendants, Patrick and Robert Singletary,[1] suggest that the undersigned must recuse herself from this case pursuant to 28 U.S.C. § 455(b)(4).  See Patrick Singletary's Response to Magistrate's Order of April 6, 2005 (Dkt. No. 154; P.

---

[1] In Defendant Robert Singletary's response, he seeks to adopt Defendant Patrick Singletary's memorandum.  See R. Singletary's Response at 1.  The Motion to Adopt Patrick Singletary's Response (Dkt. No. 155) is **GRANTED**, and the Court will consider Defendant Patrick Singletary's memorandum as submitted on behalf of Defendant Robert Singletary as well.

Singletary's Response) at 3-4; Robert D. Singletary's Response to Magistrate's Order of April 6, 2005 (Dkt. No. 155; R. Singletary's Response) at 1; United States' Position Regarding Recusal of Magistrate Judge (Dkt. No. 156; Government's Response) at 5-7. The government also indicates that recusal would be appropriate under 28 U.S.C. § 455(a). See Government's Response at 4-5. Defendants, Clifford Shaw and Peter Russo, suggest that the record is unclear as to whether recusal is required; thus, they contend that an evidentiary hearing is necessary. See Clifford Shaw's Response Regarding Recusal of Magistrate (Dkt. No. 157); Notice of Intent to Adopt Clifford Shaw's Response Regarding Recusal of Magistrate (Dkt. No. 158). The undersigned does not believe that an evidentiary hearing is necessary in order to resolve this issue. After careful consideration of the parties' memoranda and the Court's own independent research, the undersigned will now address whether recusal is appropriate in this case.

The parties have identified two areas of potential conflict as a result of the undersigned's stock ownership. The first area is restitution. The undersigned must consider whether First Union sustained any financial loss that may be attributed to Defendants' alleged illegal activities and whether stock ownership in an alleged crime victim automatically necessitates recusal. See Order (Dkt. No. 150) at 2; Government's Response at 3, 5-7; P. Singletary's Response at 3-4. In its response, the government reports that it "cannot definitively state that Wachovia did not and will not suffer any loss as a result of the loans closed through [the Defendants'] scheme." Government's Response at 3. While the government was able to state at the April 5, 2005 hearing that First Union did not suffer any monetary losses as a result of the loans it made to

Defendants, see P. Singletary's Response at 2, the government acknowledged that First Union could have acquired, through the secondary market, mortgages executed by consumers, who purchased properties from Defendants that were part of the scheme alleged in the Indictment. See Government's Response at 3. In addition, the government alleges in its response that First Union could purchase such mortgages in the future. See id. at 3, 6. Based on the statements made by the government at the April 5, 2005 hearing and those contained in its response, it does not appear that First Union has incurred any financial loss or is entitled to restitution at this time. See id. at 3, 6; see also Order (Dkt. No. 150) at 1. However, the government does not know whether First Union has actually purchased one of the subject loans on the secondary market, see Government's Response at 3; thus, the possibility that First Union would be entitled to restitution at the conclusion of this case exists even if it appears to be remote at this time.

The next area of potential conflict arises from the government's list of unindicted co-conspirators. See P. Singletary's Response at 2. The list of unindicted co-conspirators provided by the government on April 5, 2005, apparently includes the names of two former employees of First Union. See id. The Singletary Defendants contend that "[i]f [the former employees] are knowing unindicted co-conspirators to a bank fraud scheme while they were loan officers and their conspiratorial conduct included their activities as loan officers of First Union, then First Union may be criminally and civilly liable under the doctrine of respondeat superior for their actions and the results of their conspiratorial activities." Id. (emphasis in original). In addition, the government contends that "[i]t is anticipated that at least one of the bank employees will face federal felony charges stemming from said

involvement," which could lead to negative media coverage. See Government's Response at 7. Even if the employees are not indicted, the government represents that they will likely testify, which could also lead to negative publicity. See id. Finally, the government further opines that "[i]t is difficult to forecast the effect, if any, said publicity will have on the bank's market position." Id.

## I.     28 U.S.C. § 455(b)(4)

The Court first considers whether recusal is mandated under § 455(b)(4). This section directs that a magistrate judge shall disqualify herself when she

> knows that [she], individually or as a fiduciary, or [her] spouse or minor child residing in [her] household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

28 U.S.C. § 455(b)(4). First Union is not a party in this case. See Government's Response at 6; P. Singletary's Response at 4 n.3. Thus, the Court only needs to consider whether the stock ownership constitutes a financial interest in the subject matter in controversy or whether the undersigned has an interest that could be substantially affected by the outcome of this proceeding.

### A.     Restitution

The Singletary Defendants contend that the subject matter of this action is First Union and the alleged bank fraud. See P. Singletary's Response at 3-4. They assert that it does not matter whether First Union has incurred a financial loss or whether it is entitled to restitution; the mere ownership of stock in a victim of a crime is sufficient to require disqualification under § 455(b)(4). See id. The government contends that the undersigned

has a financial interest in the subject matter of the action because there is a possibility that First Union could be eligible for restitution at the resolution of this case.  See Government's Response at 6.  Thus, it alleges that it is "reasonable that there may be a direct nexus between the nonparty's financial interest and the outcome of this matter."  Id.

At least two circuit courts of appeals have concluded that stock ownership does not warrant recusal pursuant to § 455(b)(4) when there is no possibility of restitution.  See United States v. Rogers, 119 F.3d 1377, 1384 (9th Cir. 1997); United States v. Nobel, 696 F.2d 231, 234-35 (3d Cir. 1982).  Both of these cases found that "stock ownership in the corporate victim of a crime cannot be deemed a financial interest in the subject matter in controversy."  Rogers, 119 F.3d at 1384; Nobel, 696 F.2d at 235.  The court in Nobel explained that because the affairs of the allegedly defrauded company were not in dispute in the action or "being resolved by the criminal proceeding," it was not the subject matter in controversy.  696 F.2d at 234.  Furthermore, the court found that the judge's stock ownership would not be impacted significantly by the proceeding as there was no possibility of a restitution award by the court.  See id.

Several other courts have concluded that ownership of stock in a victim of a crime does not warrant recusal under § 455(b)(4) even when restitution is a possibility.  See United States v. Farrington, No. 00-4241, 00-4242, 2001 WL 1464023, at **1, 4 (7th Cir. Nov. 16, 2001)[2] (unpublished table decision); United States v. Aragon, No. 99-50341, 2000

---

[2]   A review of the court's decision reflects that the court did not specifically address the question of recusal pursuant to § 455(b)(4).  However, the court's finding that the presiding judge was not required to recuse under the discretionary standard set forth in § 455(a) establishes that recusal was not mandated by § 455(b)(4).

WL 868566, at **1-2 (9th Cir. June 29, 2000) (unpublished table decision); United States v. Lampe, No. 95-1946, 1996 WL 570558, at *3 (7th Cir. Oct. 1, 1996) (unpublished table decision); see also Reese-Thomas v. United States, No. 03-CV-1812, 2003 WL 22709080, at *2 (E.D.N.Y. Nov. 17, 2003).

In this case, there is no present monetary loss to First Union and no present entitlement to restitution. There exists a possibility in the future that First Union may incur a financial loss and be entitled to restitution. However, that possibility is speculative. In addition, the subject matter in controversy is not the affairs of First Union, but rather whether Defendants committed certain criminal offenses. While restitution to the victim might be considered part of the subject matter, there is no indication from the government, at this time, that First Union would be entitled to such an award. As there is no present entitlement to restitution, the undersigned concludes that recusal is not required under 28 U.S.C. § 455(b)(4).[3]

### B.   Potential Liability for Actions of Former Employees

At the April 5, 2005 hearing, the parties informed the Court that former employees of First Union were identified by the government as unindicted co-conspirators. However, the undersigned finds that the potential civil or criminal liability of First Union due to the actions of its former employees is entirely too speculative to warrant recusal in this action.

---

[3] The government maintains that recusal is required under § 455(b)(4) "where there is a direct connection between the nonparty and the subject matter in controversy." Government's Response at 6. It suggests that such a direct connection might exist in this case due to the possibility of restitution. See id. In support of its position, the government cites Sollenbarger v. Mountain States Telephone & Telegraph Co., 706 F. Supp. 776, 782-84 (D.N.M. 1989). However, in that case, the judge owned stock in a corporation that could be required to satisfy part of the judgment. See id. at 783-84. The Sollenbarger opinion does not persuade the Court that recusal under § 455(b)(4) is required in this case.

The fact that First Union may be held responsible in some future action is too remote. Indeed, the government characterizes these employees as "rogue bank insiders," Government's Response at 7, which belies Defendants' assertion of the company's liability based on the doctrine of respondeat superior, see P. Singletary's Response at 2.  Merely because the actions of former bank employees might be at issue in these proceedings does not mean that First Union or its affairs are a part of the subject matter in controversy such that the undersigned's financial interest in First Union would require disqualification under § 455(b)(4).

Similarly, the potential impact on First Union's market position as a result of any negative publicity that results from this case is also too remote to warrant recusal.  For example, the court in Sollenbarger recognized that the fact that the judge's ownership of property adjacent to the property at issue in the litigation, which could decrease in value as a result of the litigation, did not require recusal.  706 F. Supp. at 781.  Therefore, simply because this litigation may have some indirect effect on First Union's stock value does not mandate recusal.  The potential impact based on negative news coverage is simply too speculative.  In light of the foregoing, the undersigned concludes that recusal is not mandated pursuant to 28 U.S.C. § 455(b)(4).

**II.   28 U.S.C. § 455(a)**

The Court must also consider whether the potential conflicts identified by the parties warrant recusal pursuant to § 455(a).  Title 28, United States Code, § 455(a) requires that "[a]ny . . . magistrate judge of the United States shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned."  Because the Defendants assert

that recusal is mandated pursuant to § 455(b), they do not address the issue of whether the undersigned should recuse herself from this case based on § 455(a) to avoid the appearance of impropriety. However, the government argues that recusal would be warranted under § 455(a). See Government's Response at 4-5. The government asserts that because First Union is identified as an alleged victim of bank fraud in the indictment, "[t]his in itself, even without the bank suffering an actual financial loss, could result in the public questioning the impartiality of the Magistrate Judge." Id. at 5. Thus, the government concludes that in order for the undersigned "to avoid even a possibility of an issue of impartiality or bias, coupled with the policy of promoting public confidence in the judiciary, the government recommends that the prudent course of action in this case would be for the [undersigned] to recuse herself from this matter pursuant to 28 U.S.C. § 455(a)." Id.

The circuit courts of appeals are split on whether recusal should occur pursuant to § 455(a) when the judge owns stock in the victim of a crime. Compare United States v. Lauersen, 348 F.3d 329, 335-37 (2d Cir. 2003), vacated, in part, on other grounds, 125 S. Ct. 1109 (2005) (mem.); Rogers, 119 F.3d at 1383-84; United States v. Sellers, 566 F.2d 884, 887 (4th Cir. 1977)[4] with Nobel, 696 F.2d at 235-36. However, the Judicial Conference Advisory Committee on Codes of Conduct for United States Judges has advised that a "judge should recuse if the judge or the judge's spouse owns stock in a victim who may be entitled to restitution." Lauersen, 348 F.3d at 336 (citing Guides to Codes of Conduct, Ch. 5, Compendium of Selected Opinions § 3.1-6[7]). Two courts have

---

[4] One judge of the three-judge panel dissented in Sellers and argued that recusal was warranted under § 455(a). See 566 F.2d at 888-89.

suggested that this advice should not be interpreted as requiring recusal under § 455(a) in every criminal case in which a judge has an interest in a crime victim that may be entitled to restitution. See id.; In re: Nat'l Union Fire Ins. Co. of Pittsburgh, Pa, 839 F.2d 1226, 1231 (7th Cir. 1988).

The circumstances before the Court are unique. The prosecution of this case has just begun. The entity in which the undersigned owns stock is not currently entitled to restitution, however; the government is unable to eliminate the possibility that First Union could be entitled to restitution at the conclusion of this case. The guidance from the Advisory Committee suggests that recusal would be appropriate if that eventuality came to pass. At least two of the Defendants have already indicated their belief that the undersigned's stock ownership creates a conflict of interest that would require the undersigned to recuse herself. See P. Singletary's Response at 3-4. This certainly suggests their belief that impartiality of the undersigned might reasonably be questioned as a result of her financial interest in First Union. The government has further indicated its belief that the undersigned's financial interest could cast a cloud upon her future rulings in this case and the better course of action would be to recuse at this early stage. See Government's Response at 4-5. Furthermore, the possibility remains that First Union may yet be identified as a potential recipient of restitution. Were the undersigned to recuse herself at a later time based upon such a disclosure, there would be a duplication of judicial effort, resulting in a waste of judicial resources. More importantly, it may cause the Defendants to question the impartiality of the magistrate judge with respect to any proceedings that had been completed, which would further complicate this proceeding. In

light of the foregoing, and given the unique circumstances before the Court in this action, the undersigned has determined that recusal, while not required, is appropriate under 28 U.S.C. § 455(a).

### III.  Conclusion

Accordingly, the undersigned finds that she should recuse herself from further proceedings in this action.  This conclusion has been reached upon consideration of the unique circumstances and specific facts presented in this case.  The undersigned expresses no opinion as to whether she would recuse in all such cases in the future where her family owns stock in the victim of a crime and there is no present financial loss.

It is hereby **ORDERED**:

1. The undersigned hereby recuses herself from further proceedings in this action.
2. The Clerk of the Court is directed to reassign this case to another magistrate judge.

**DONE AND ORDERED** at Jacksonville, Florida, this 22nd day of April, 2005.

*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States Magistrate Judge

Copies to:
Counsel of Record